UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMID AMIRI,<br><br>    Plaintiff,<br><br>v.<br><br>BAY HARBOUR CARE HOME, et al.,<br><br>    Defendants. | Case No. 15-cv-03994-JSC<br><br>**ORDER RE MOTION FOR LEAVE TO FILE COUNTERCLAIM**<br><br>Re: Dkt. No. 107 |

This action concerns the sale of Glenn W. Groff's senior care home, Bay Harbour Care Home ("Bay Harbour") (together, "Defendants") to Plaintiff Hamid Amiri. Mr. Amiri alleges Mr. Groff breached two contracts: 1) the Business Purchase Agreement and Joint Escrow Instructions; and 2) the Lease Agreement with Option to Purchase. Now pending before the Court is Defendants' motion for leave to file a counterclaim. (Dkt. No. 107.) Having carefully reviewed the parties' briefing , the Court concludes that oral argument is unnecessary and DENIES Defendants' motion.

**BACKGROUND**

**A. Wells Fargo Account and Allegations of Theft**

Plaintiff opened an account at Wells Fargo in the name Hamid Amiri D/B/A Bay Harbour. (Dkt Nos. 111-1 at 2 pg. 149:10-22, 107-1 at 46:1-6.) Mr. Groff accompanied Plaintiff to the bank to open the account. (*Id.*). Mr. Groff believed that Plaintiff was opening the Bay Harbour account in preparation for buying the business. (*Id.* at pg. 150:6-7.)

The plan was that Bay Harbour revenue would be deposited into this new account and Plaintiff would be responsible for paying Bay Harbour's expenses including payroll. (Dkt. No. 107-1 at 45 pg. 90:24-91:6, 95:7-9.) Plaintiff was able to make deposits and withdrawals. (*Id.* at

46:22-25.) Mr. Groff's name was not on the account. (*Id*. at 46:20-21.) Plaintiff testified that he did not withdraw any funds from the account for his personal use. (*Id*. at 51:4-6.) Plaintiff did not recall ever seeing a statement from the Bay Harbour account until Wells Fargo produced records in September 2017. (Dkt. Nos. 110-1 at 2 ¶ 4, 111-2:14-18.)

On August 11, 2015 Mr. Groff cancelled the contracts with Plaintiff due to "[n]on-[p]erformance and [t]heft of checks." (Dkt. No. 111-5 at 1.) Two weeks later, Defendants' first attorney, Gene LaFollette, told Plaintiff's counsel that "Wells Fargo is continuing to investigate [Plaintiff's] fraudulent conduct." (Dkt. No. 111-6 at 1.) The following day, Ms. LaFollette told Plaintiff's counsel "[y]our client stole money from my client." (Dkt. No. 111-3 at 1.)

**B.     Pleadings**

Plaintiff filed his complaint on September 1, 2015 alleging eleven causes of action: (1) violations of 42 U.S.C. § 1981, (2) violations of 42 U.S.C. § 3604, (3) breach of purchase agreement, (4) breach of lease option, (5) specific performance, (6) fraud, (7) negligent misrepresentation, (8) defamation per se, (9) intentional infliction of emotional distress, (10) violations of California Civil Code § 51, and (11) unjust enrichment. (Dkt. No. 1.) Defendants filed their answer on October 6, 2015 and did not assert a Counterclaim. (Dkt. No. 15.) One week later, on October 13, 2015, Defendants' counsel emailed a letter to Plaintiff's counsel accusing Plaintiff of having "illegally obtained and squandered at least $60,000.00 of Bay Harbour's funds," and that he "unilaterally removed $18,900 in checks from Bay Harbour," before demanding that Plaintiff pay Defendants $78,900 of the $100,000 Plaintiff deposited into escrow. (Dkt. No. 111-7 at 2.)

**C.     Prior Defendants' Counsel & Plaintiff's Wells Fargo Discovery Attempts**

Wells Fargo froze the Bay Harbour Account in July or August 2015 when it learned of the parties' dispute.. (Dkt. No. 110-1 at 2 ¶ 2.) After Wells Fargo froze the account, Plaintiff, his counsel, and Defendants' former and current counsel attempted to obtain the bank statements. (*Id.* at 2 ¶ 3; Dkt. No. 111-2 at 2 ¶ 5.) Below is a timeline of their efforts:

- **August 13, 2015**: Plaintiff requested that Wells Fargo release information related to the Bay Harbour Account, and preserve evidence. (Dkt. No. 111-8 at 1.)

- **December 16, 2015**: Plaintiff served a subpoena on Wells Fargo seeking to obtain information to disprove Defendants' claim that Plaintiff opened an account in the name of Bay Harbour without Mr. Groff's knowledge and consent. (Dkt. No. 111-9.)

- **January 15, 2016**: Wells Fargo produced four still images responsive to Plaintiff's subpoena, but did not produce bank statements. (Dkt. No. 111 at 3 ¶¶ 10- 11.)

- **January 19, 2016**: Defendants' former counsel served a subpoena on Wells Fargo seeking to obtain "Any and all ... Documents regarding or relating to any accounts held in the name of Hamid Amiri and/or Bay Harbour and/or Hamid Amiri and Glenn W. Groff." (Dkt. No. 111-10 at 7.)

- **January 20, 2016**: Plaintiff produced documents responsive to Defendants' request for production including checks from his personal account and the Bay Harbour Account, as well as parts of Plaintiff's bank statements that Plaintiff relies on to support his claim for damages. (Dkt. No. 111 at 3 ¶ 13.)

- **January 29, 2016**: Plaintiff's counsel sent a letter to Wells Fargo regarding its insufficient response to Plaintiff's subpoena. (Dkt. No. 111-11.) Wells Fargo did not respond. (Dkt. No. 111 at 3 ¶11.)

- **February 11, 2016**: Plaintiff again attempted to contact Wells Fargo, but was unable to speak with anyone. (*Id.*)

- **February 12, 2016**: Plaintiff's counsel reached an employee in Wells Fargo's subpoena compliance department who claimed the bank complied with Plaintiff's subpoena. (*Id.*)

    o Counsel for Defendants and Plaintiff conferred about Plaintiff's production of documents and efforts to obtain the statements from the Bay Harbour Account, including Wells Fargo's claim of compliance. (Dkt. Nos. 111 at 4 ¶ 14.)

    o Plaintiff's Counsel affirmed a continued desire for Wells Fargo to "produce documents and images requested in subpoenas served by our respective offices . . . show[ing] amounts deposited into and paid out of that account." (*Id.*; Dkt. No. 111-4 at 2.)

    o Defendants' counsel agreed to spearhead these efforts. Defendants did not object to Plaintiff's production of partially redacted bank records offered to show Plaintiff's damages. (Dkt. No. 111 at 4 ¶ 14.)

### D.  Current Defendants' Counsel & Plaintiff's Discovery Attempts

Defendants' current counsel substituted into the case in January 2017. Fact discovery closed on June 19, 2017. (Dkt. No. 64 at 1.) On July 10, 2017, counsel for both Defendants and Plaintiff communicated about their mutual interest in obtaining the Wells Fargo documents, memorialized in a post call email stating "the parties are in agreement that [Wells Fargo Bank

3

Records] are relevant and should be produced.... we will work cooperatively to obtain them from Wells Fargo, by subpoena if necessary, notwithstanding the close of discovery." (Dkt. No. 111-12 at 1.) On July 27, 2017, Defendants' counsel confirmed the bank informed him "that Mr. Amiri has been working with an individual in Wells Fargo's legal department and that person could help us get the bank information." (Dkt. No. 111-12 at 3.)

Plaintiff continued to try to obtain records from Wells Fargo and reiterated to Defendants' counsel that Plaintiff did not object to a post cut-off subpoena. (*Id*. at 4-6 "we do wish to discuss obtaining a complete set of relevant Wells Fargo documents. I understood Roger was going to identify who we needed to speak with to make that happen.") By mid-August 2017, the parties agreed that Defendants would serve another subpoena on Wells Fargo to try to obtain the records. (*Id*. at 7, "we are in agreement about issuing subpoenas for Wells Fargo…records.")

On September 14, 2017, nine months after substituting into the case, Defendants' current counsel served a subpoena on Wells Fargo seeking "any documents, including bank statements, related to the Wells Fargo bank account of Hamid Amiri dba Hamid Amiri Bay Harbour Care Home .... (and Account Number 2109414142) from April 2015 to present." (Dkt. No. 107-1 at 70, 73.) On September 22, 2017, Wells Fargo produced the statements Defendants rely upon for the instant motion. (*Id*. at 74-92.) The bank statements reflect that Plaintiff not only made deposits into the account but also withdrew tens of thousands of dollars. (*Id*. at 80, 85-86, 90.) There is no evidence before the Court regarding how Plaintiff spent these withdrawals. Trial is set for April 9, 2018. (Dkt. No. 64 at 1.)

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Amendments to add counterclaims are controlled by Rule 15. *See* Fed. R. Civ. P. 15, advisory committee notes to 2009 Amendments ("Rule 15 [is] the sole rule governing amendment of a pleading to add a counterclaim."). The court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), and "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048,

4

1051 (9th Cir. 2003). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital,* 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc*, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013). "Rather, [a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital,* 316 F.3d at 1052 (emphasis in original). "The party opposing leave to amend bears the burden of showing prejudice[,]" *Sherpa v. SBC Telecomm'cns, Inc.,* 318 F.Supp.2d 865, 870 (N.D. Cal. 2004), and generally of demonstrating why leave to amend should not be granted, *Genentech, Inc. v. Abbott Labs.,* 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

**DISCUSSION**

Defendants argue that none of the *Foman* factors - undue delay, futility, bad faith, or prejudice - outweigh the liberal policy of granting leave to add Defendants' counterclaim seeking damages for financial elder abuse and conversion. (Dkt. No. 107 at 11-17.)

**A.     Undue Delay**

Undue delay is "delay that prejudices the nonmoving party or imposes unwarranted burdens up on the court." *San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 3269202, at *5 (S.D. Cal. Aug. 1, 2017). Delay alone is not sufficient to deny leave to amend but plays a factor in the analysis. *Morongo Band of Mission Indians v. Rose*, 839 F.2d 1074, 1079 (9th Cir. 1990). Relevant to this inquiry is whether the new claim would "greatly alter[ ] the nature of the litigation." *Morongo Bank*, 839 F.2d at 1079. The passage of time is not, in and of itself, undue delay, instead the relevant inquiry is "[w]here the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the

original complaint, the motion to amend may be denied." *Jordan v. Cnty. of L.A.,* 669 F.2d 1311, 1324 (9th Cir. 1982) *vacated on other grounds*, *Cnty. of L.A. v. Jordan*, 459 U.S. 810 (1982).

Defendants make two arguments to support their position that their counterclaim was not brought with undue delay. First, Defendants argue Plaintiff was not forthcoming with the Wells Fargo Bank records and Defendants would have brought the counterclaim earlier had they been aware of the withdrawals reflected in the bank statements. However, Defendants' motion ignores entirely the efforts Plaintiff did make to obtain the bank records. Their effort to paint Plaintiff as having obstructed discovery of the bank statements is unavailing. Moreover, given that Defendants accused Plaintiff of stealing funds from Mr. Groff in 2015, Defendants could have made their counterclaim at that time. There is nothing new about the accusation that Defendants are now making two months before trial.

Defendants' response that they could not bring the counterclaim until they had "evidence" of Plaintiff's alleged theft is unpersuasive. They had enough evidence in 2015 to accuse Plaintiff of the exact theft they seek to accuse him of in the counterclaim. Defendants' reliance on *Kuschner v. Nationwide Credit Inc.*, 256 F.R.D. 684 (E.D. Cal. Mar. 31, 2009) to argue that the claims matured when Defendants obtained the bank records is equally unpersuasive. In *Kuschner*, the claim at issue concerned unlawful, secret telephone monitoring. *Id*. at 690. The court concluded that because the improper conduct alleged was, by its nature, secret, "it would defy logic and basic notions of fairness to hold that the claim accrued when the act occurred, rather than when its victim became aware of it." *Id*. Here, unlike *Kuschner*, the claims of financial elder abuse and conversion are not, by their nature, inherently secret. Mr. Groff had enough information regarding Plaintiff's alleged theft to cancel the purchase and lease agreements even before Plaintiff's complaint was filed.

Second, Defendants argue the statute of limitations has not run on either the elder abuse or conversion claims. However, the issue is not the statute of limitations but rather when Defendants knew or should have known about Plaintiff's alleged theft from Mr. Groff. *See Jordan*, 669 F.2d at 1324. Mr. Groff accused Plaintiff of theft approximately three weeks *before* Plaintiff filed his complaint and more than two years ago. Indeed, Plaintiff's alleged theft was a if not the reason

Mr. Groff cancelled the contracts. Further, Defendants do not explain why they did not move to add their counterclaim in September 2017 when they received the bank records they had belatedly subpoenaed.

Accordingly, the undue delay factor weighs in Plaintiff's favor. However, delay alone is not sufficient to deny the motion, *see Morongo Bank*, 839 F.2d at 1079; therefore, the Court turns to the remaining *Foman* factors.

**B.     Futility**

"Leave to amend need not be granted when the proposed amendment is futile." *Imblum v. Code Corporation*, 2017 WL 3594569, at *3 (S.D. Cal. Aug. 21, 2017) (citing *Universal Mortg. Co. v. Prudential Ins. Co.,* 799 F.2d 458, 459 (9th Cir. 1986). A proposed amendment is futile only if it would be immediately subject to dismissal. *Nordyke v. King,* 644 F.3d 776, 788 n.12 (9th Cir. 2011). Thus, the proper test when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6). *Id.* The defendant therefore must present adequate argument and authority in support thereof to enable the court to make an informed decision as to futility. *See, e.g., Raifman v. Wachovia Secs., LLC,* 2012 WL 1611030, at *3 (N.D. Cal. May 8, 2012) (noting that unsupported, conclusory arguments about futility are not enough). Thus, an amended "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Futile amendments to a complaint should not be permitted. *DCD Programs,* 833 F.2d at 188 (citations omitted.). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Defendant's counterclaim seeks to add two claims: financial elder abuse and conversion. (Dkt. No. 107 at 11-17.) Pursuant to California Welfare and Institutions Code § 15610.30, financial elder abuse occurs when an individual:

> (1) [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both,
> (2) [a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both, or

> (3) [t]akes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence.

Cal. Welf. & Inst. Code § 15610.30(a). The statute then defines two ways a person can "take, secrete, appropriate, obtain or retain property," the first being when "the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult," and the second being "when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b), (c).

"Conversion is the wrongful exercise of dominion over the property of another." *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F.Supp.2d 1218, 1220 (S.D. Cal. Aug. 21, 2008) (citing *Farmers Ins. Exch. v. Zerin,* 53 Cal.App.4th 445, 451 (1997). Conversion requires (1) the plaintiff's ownership or right of possession at the time of the conversion, (2) the defendant's conversion by a wrongful act of disposition of property rights, and (3) damages. *Id*. (citing *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (1998)). "Money can be the subject of a conversion action if a specific, identifiable sum is involved." *Id*. (citing *Zerin,* 53 Cal.App.4th at 452).

Both financial elder abuse and conversion require Defendants to prove Plaintiff unlawfully took Mr. Groff's property. Plaintiff argues Defendants' counterclaim is futile because Defendants admit that they do not know whether Plaintiff used the withdrawals for Bay Harbour or for Plaintiff's personal use and therefore the allegation that Plaintiff stole from Defendants is pure speculation. Given the lack of evidence as to what the funds were used for, the Court cannot say that the claims are futile as a matter of law.

**C.     Bad Faith**

Bad faith is illustrated when the moving party seeks to amend "to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace American Group Inc.,* 170 F.3d 877, 881 (9th Cir. 1999). Leave to amend may be denied where the amendment is introduced to cause a

delay in proceedings or for some other improper purpose. *See Foman,* 371 U.S. at 182. For example, courts have denied leave to amend due to bad faith where the plaintiff's motion was brought "to avoid the possibility of an adverse summary judgment ruling" and would prejudice defendant by requiring re-opening of discovery, *see Acri v. Int'l Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398–99 (9th Cir.1986), or where the plaintiff's motive was to destroy diversity and, therefore, the court's jurisdiction, *see Sorosky v. Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir. 1987).

Plaintiff argues Defendants acted in bad faith by not including in their motion information regarding both Plaintiff's and Defendants' efforts to obtain the Wells Fargo bank statements. While Defendants should have included that information, the omission of disfavorable facts does not rise to the level of bad faith. While permitting the counterclaim may prolong or delay litigation given the trial is only two months away, there is no evidence that Defendants brought the motion for this purpose.

Accordingly, the Court concludes Defendants have not acted in bad faith.

**D.      Prejudice**

It is "the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. A district court "may deny a motion for leave to amend if permitting an amendment would, among other things, ... prejudice the opposing party." *Zikovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002). The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "In evaluating prejudice courts often consider whether relevant deadlines would have to be continued as a result of the new pleading, the stage of discovery at the time of amendment, the extent to which additional discovery would have to be conducted and the degree to which amendment may delay the proceedings." *Imblum*, 2017 WL 3594569, at *3 (citing *Johnson v. Serenity Transp., Inc.,* 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015)) (collecting cases). Denial is proper when an amendment is brought on the eve of discovery or shortly before trial. *Zivkovic*, 302 F.3d at 1087.

Fact discovery closed seven months ago in June 2017. Trial is a mere two months away. To defend against two new claims brought more than two years into litigation and eight weeks before trial is clearly prejudicial to Plaintiff. Plaintiff has been prosecuting this case not defending it. It is prejudicial to change that whole dynamic on the eve of trial. Denial of Defendants' motion is proper for these reasons. *See Zivkovic*, 302 F.3d at 1087 (concluding the district court's decision to deny the motion to amend was proper because the motion was filed only several days before the discovery cut-off and less than three months before trial).

## CONCLUSION

Defendants' unexcused inordinate delay coupled with the *Foman* factor afforded the greatest weight, prejudice, convinces the Court that denial of Defendants' motion is warranted. Accordingly, Defendants' motion for leave to file the counterclaim is DENIED.

Jury trial shall commence on **April 16, 2018**. (Note, this is one week later than originally scheduled to start). The pretrial conference remains on calendar for March 22, 2018 at 2:00 p.m. If the parties would like to adjust that date in light of the pretrial deadlines and the further settlement conference, they must submit a stipulation; otherwise the date shall remain the same.

This Order disposes of Docket No. 107.

**IT IS SO ORDERED.**

Dated: February 7, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge